IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 6, 2005 Session

## GLORIA KIM SMITH v. CHARLES A. PORTERA, M.D., ET AL.

**Appeal from the Circuit Court for Hamilton County**
**No. 04C282     Samuel H. Payne, Judge**

—————————

**No. E2004-02960-COA-R3-CV - FILED MAY 27, 2005**

—————————

The plaintiff in this medical battery case argues that the trial court erred in granting the defendant doctor summary judgment and argues that a genuine issue of material fact exists as to whether she consented to an unnamed surgical procedure in addition to scheduled procedures named in a hospital consent form. The trial court granted the defendant's motion for summary judgment upon findings that the case was actually a suit for medical malpractice, rather than medical battery, and that the plaintiff failed to present expert proof that such surgery was not in her best interest. We vacate the judgment of the trial court and remand for trial on the merits upon our finding that the plaintiff's suit states a cause of action for medical battery; and that the consent form signed by the plaintiff authorized the additional surgery only if it was required by an unforseen condition and whether there was an unforseen condition requiring the additional surgery remained a genuine issue of material fact.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated; Cause
Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Sam Jones, Chattanooga, Tennessee, for the Appellant, Gloria Kim Smith.

James D. Robinson and Laura Beth Rufolo, Chattanooga, Tennessee, for the Appellee, Charles A. Portera, M.D.

### OPINION

The Appellee/Defendant in this matter, Charles A. Portera, M.D., is a licensed physician engaged in the specialty practice of gynecologic oncology in Chattanooga, Tennessee. The Appellant/Plaintiff, Gloria Kim Smith, became Dr. Portera's patient in 1980. Several years prior to becoming Dr. Portera's patient, Ms. Smith was involved in an automobile accident which left her

in a paraplegic condition and she remained in that condition at all times relevant to the matters herein.

Dr. Portera saw Ms. Smith as a patient on multiple occasions between 1980 and 2000. At some point during this period, Dr. Portera diagnosed Ms. Smith with uterine fibroid tumors. He recommended that these fibroid tumors be removed by surgery and, in 1996, he and Ms. Smith discussed available surgical options in that regard, including the option of an abdominal hysterectomy. Ms. Smith chose not to undergo a hysterectomy at that time and chose, instead, to undergo a less radical procedure known as dilation and curettage, also referred to as "D and C", which involves the scraping of the lining of the uterus and does not involve the removal of reproductive organs.

In June of 2000, Ms. Smith presented herself at Dr. Portera's office complaining of problems she was experiencing because of the previously diagnosed uterine fibroid tumors. As they had in 1996, Dr. Portera and Ms. Smith discussed the possibility of her having a hysterectomy. Shortly thereafter, on July 28, 2000, Ms. Smith signed a form at Dr. Portera's office whereby she consented to a dilation and curettage, a total abdominal hysterectomy, a bilateral salpingo-oophorectomy,[1] an appendectomy, and a possible exploratory laparotomy. The surgery was scheduled to be performed at Memorial Hospital in Chattanooga, Tennessee, on August 14, 2000.

Ms. Smith attests that on August 14, 2000, while she was waiting in a surgical holding area at Memorial Hospital, shortly before the scheduled surgery, she signed a Memorial Hospital form styled "REQUEST FOR OPERATIVE/SPECIAL PROCEDURE." This form includes the following language pertinent to this appeal:

> I, GLORIA KIM SMITH , request that TOTAL ABDOMINAL HYSTERECTOMY, BILATERAL SALPINGO-OOPHORECTOMY, APPENDECTOMY, POSSIBLE: EXPLORATORY LAPAROTOMY be performed upon me at Memorial Hospital, Chattanooga, Tennessee.
>
> I REQUEST AND AUTHORIZE my physician, Dr. CHARLES A PORTERA , and other physicians of his/her choice to assist in the performance of this operation or procedure.
>
> I understand that during the course of the operation/procedure, unforseen conditions may be discovered which require an extension of the original procedure or a different procedure from that described above. I REQUEST AND AUTHORIZE my physician or other physicians who may be assisting to perform such additional surgical procedures as are indicated by good medical practice which they deem to be in my best interest by exercise of their medical judgment.

---

[1] Removal of the Fallopian tubes.

The surgery ensued and, in the course of performing the dilation and curettage, Dr. Portera observed what he refers to as a "lesion" which, he asserts, was "located in or near the same area in which he had treated other lesions on Ms. Smith" and lateral to the labia majora. Dr. Portera testifies that he felt this lesion "needed to be removed because it could be cancerous." Dr. Portera excised the lesion, sent it to the pathology laboratory for examination and, after receiving a report that the lesion was not malignant, sutured the site of excision. Dr. Portera testifies that this procedure extended the planned surgery by a total of thirty or forty minutes. Thereafter, the hysterectomy and remaining scheduled procedures were apparently concluded without incident.

On February 9, 2004, Ms. Smith filed a complaint[2] against Dr. Portera requesting compensatory damages for medical battery. The complaint alleges that Dr. Portera excised the lesion described above without Ms. Smith's consent or knowledge. Among other things, the complaint further alleges the following:

> On August 17 Ms. Smith was discharged from the hospital. On Saturday, August 20, the sutures which had been applied by Defendant Portera to close the added surgery to cut out the ulcerated area failed to hold that tissue together. The resulting open wound necessitated admission by Defendant Portera to Memorial Hospital for treatment, hopefully to effect healing of the unplanned surgical wound. Such hospitalization provided only minimal improvement. To continue efforts to promote wound healing, Ms. Smith was basically confined to her bed for months on end. Home health nursing services provided assistance trying to obtain closure of the open wound. Only after months was Ms. Smith able to effect minimal healing of the condition. Finally, by the Fall of 2003 the wound healing process had gradually progressed and was by that time similar to what Defendant Portera observed during his examination under general anesthesia on August 14, 2000. In other words, the ulceration had finally returned to its condition from over three years earlier; however, there had developed more scar or devascularized tissue.

The complaint also alleges that during the time of her recovery Ms. Smith "suffered significant muscular atrophy to her body because she was unable to maintain any exercise routine to treat her impaired lower extremities."

On July 20, 2004, Dr. Portera filed a motion for summary judgment and supporting memorandum of law which assert that Ms. Smith expressly consented to the excisional biopsy by signing the consent form at Memorial Hospital just prior to her surgery. Ms. Smith filed a motion for partial summary judgment and, thereafter, a consolidated brief in opposition to Dr. Portera's motion for summary judgment and in support of her motion for partial summary judgment. In this brief, Ms. Smith asserts that she did not give Dr. Portera express consent to perform the excisional

---

[2]Ms. Smith's complaint states that she previously filed suit against Dr. Portera on March 14, 2001, but that that suit was voluntarily dismissed by order entered February 11, 2003.

biopsy and that there is no genuine issue of fact in that regard. She further asserts that there is, however, a genuine issue of material fact with respect to whether she gave implied consent to the surgery complained of and that this issue should be resolved by a jury. A hearing on these motions was held on October 18, 2004. The trial court determined that Ms. Smith's case was actually a cause of action for medical malpractice rather than medical battery as stated in her complaint. Based upon this determination and the trial court's further observation that Ms. Smith had not presented any expert evidence showing that the surgery complained of was not in her best interest, the trial court granted Dr. Portera a summary judgment. Thereafter, Ms. Smith filed this appeal.

The sole issue we address in this appeal is whether the trial court erred in granting a summary judgment in favor of Dr. Portera.

The standard governing our review of a trial court's decision granting a motion for summary judgment is set forth by the Tennessee Supreme Court in *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000) as follows:

> The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. See *Robinson v. Omer*, 952 S.W.2d [423 (Tenn. 1997)] at 426, *Byrd v. Hall*, 847 S.W.2d [208 (Tenn. 1997] at 210-211. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. See *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

Because a trial court's decision to grant a motion for summary judgment is solely a matter of law, it is not entitled to a presumption of correctness. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). In determining whether such a decision is correct, we must review the record to determine if the requirements of Rule 56.04 of the Tennessee Rules of Civil Procedure have been satisfied in that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

At the outset, we are compelled to express our disagreement with the trial court's determination that this is a cause of action for medical malpractice rather than medical battery. In this regard, the trial court stated as follows at the hearing on October 18, 2004:

> I think it is medical malpractice. If [Dr. Portera] used bad judgment in doing the wrong thing, I'm telling you, for the record, I think it's medical malpractice, because, if he did something he's not supposed to do, that's medical malpractice.

In *Blanchard v. Kellum, D.D.S.*, 975 S.W.2d 522, 524 (Tenn. 1998), the Tennessee Supreme Court stated as follows with respect to a cause of action for medical battery:

Performance of an unauthorized procedure constitutes a medical battery. A simple inquiry can be used to determine whether a case constitutes a medical battery: (1) was the patient aware that the doctor was going to perform the procedure (i.e., did the patient know that the dentist was going to perform a root canal or that the doctor was going to perform surgery on the specified knee?); and, if so (2) did the patient authorize performance of the procedure? A plaintiff's cause of action may be classified as a medical battery only when answers to either of the above questions are in the negative.

Similarly, this Court stated as follows in *Church v. Perales*, 39 S.W.3d 149, 159 (Tenn. Ct. App. 2000):

A medical battery occurs when a physician performs an unauthorized procedure. Typically, a medical battery involves a physician performing a procedure that the patient did not know the physician was going to perform or a physician performing a procedure on a part of the body other than the one described to the patient.

Our review of the record convinces us that Ms. Smith's suit is for medical battery. Her complaint specifically states that she is suing Dr. Portera for medical battery and the allegation in the complaint that Dr. Portera excised the lesion or ulceration "without her consent or even knowledge only after she was awakened from general anesthesia" supports a claim for medical battery in accordance with our statement in *Perales* that "a medical battery occurs when a physician performs an unauthorized procedure." We also note that on May 21, 2004, an agreed order was entered by the trial court which decrees that "the instant action against the defendant, Charles A. Portera, M.D., solely alleges medical battery" and Dr. Portera admitted both in his brief and at the hearing on October 18, 2004, that this is a medical battery case. The trial court's determination that Ms. Smith's suit is for medical malpractice, rather than medical battery, is erroneous.

Having concluded that Ms. Smith has presented a cause of action for medical battery, we must now determine whether a genuine issue of material fact exists which would preclude summary judgment in this matter.

Dr. Portera argues that this is an appropriate case for summary judgment. He contends that when Ms. Smith signed the consent form at Memorial Hospital on August 14, 2000, she thereby authorized him to perform the excision in question. In support of this argument, Dr. Portera references that sentence in the consent form which states, "I REQUEST AND AUTHORIZE my physician, or other physicians who may be assisting to perform such additional surgical procedures as are indicated by good medical practice which they deem to be in my best interest by exercise of their medical judgment." Dr. Portera contends that this language authorized him to perform a surgical procedure different from the procedures originally scheduled and that it shows that Ms. Smith was aware that he might do so. Dr. Portera asserts that, while the plaintiff in a medical battery case is typically not required to submit expert testimony to sustain the argument that there was no

consent, this case presents the questions of whether the excisional biopsy was "indicated by good medical practice" and in the "best interest" of the patient. Dr. Portera notes, and the record confirms, that Ms. Smith does not dispute the fact that the excisional biopsy was indicated by good medical practice. Dr. Portera further notes that he attested in his affidavit that the excisional biopsy was in Ms. Smith's best interest and this placed the burden upon her to present expert proof that the excisional biopsy was not in her best interest. Dr. Portera argues that, in light of Ms. Smith's failure to present such expert proof, he was properly granted summary judgment.

While we do not necessarily disagree with Dr. Portera's analysis as far as it goes, it disregards another provision of the consent form which presents an additional prerequisite to the performance of any surgical procedures other than those originally scheduled. We refer here to that sentence in the form which immediately precedes the sentence cited by Dr. Portera. This preceding sentence states, "I understand that during the course of the operation/procedure *unforseen conditions* may be discovered which require an extension of the original procedure or a different procedure from that described above." (Emphasis added.) The paragraph, in which this sentence and the sentence referenced by Dr. Portera appear, consists solely of these two sentences and we are, therefore, compelled to construe them in conjunction with one another. It is our determination that the second sentence relates back to the first and that the words "such additional procedures" refer exclusively to "an extension of the original procedure or a different procedure" as required by the discovery of "unforseen conditions." Accordingly, it is our determination that the consent form signed by Ms. Smith only authorizes an extension of the originally scheduled procedure or a procedure different from the originally scheduled procedure if such extension or different procedure is 1) "indicated by good medical practice", 2) in the patient's "best interest" <u>and</u> 3) *required by an "unforseen condition."*

We deem the question of whether the excisional biopsy performed by Dr. Portera was required by an unforseen condition to be a question of material fact which remains unresolved and renders summary judgment improper in this case. Ms. Smith's affidavit indicates that the tissue excised by Dr. Portera was a decubitus ulcer, or pressure sore, resulting from her paralysis and she attests that it was not an unforseen condition. On the contrary, she attests, both she and Dr. Portera were aware of the condition before her surgery on August 14, 2000, and had discussed it on several occasions over the years:

> Regarding this place which was on my upper leg and not part of my genitalia, this was something Dr. Portera had seen and we had discussed on several occasions. . . . After reviewing his records, I am convinced the first time we discussed it was May 19, 1986. . . . I do not remember discussing the spot with Dr. Portera again for several years. . . . After reviewing his records, I believe the next time there was a discussion about it was May 23, 1995. . . . The spot had flared up, and we discussed what to do. . . . After reviewing Dr. Portera's records I believe the next time there was discussion about this spot was April 16, 1996. . . . At that time I asked Dr. Portera to prescribe a special cushion for me to keep pressure off it. . . . The next time I believe there was some discussion with Dr.

Portera about the pressure sore was April 22, 1997. . . . On this date, he again prescribed for me the special cushion to help me deal with it. . . . Over the years, this pressure sore would flare up and calm down. . . . I was not concerned about it because I had used various herbal solution to treat it and it usually resolved itself. . . . Dr. Portera was aware of me using this solution. . . . Before he cut it out, I really did not have too much trouble getting it to heal up when it flared up. . . . I did not consider it a problem. . . . Had he asked me I would not have authorized him to cut it out, especially knowing now how severe that problem would have been. (Numbering in original omitted.)

Even if it is agreed that, in order to avoid summary judgment, Ms. Smith was required to present expert testimony that the added excisional biopsy was not in her best interest, the same cannot be said with regard to whether that surgery was required as a result of an unforseen condition. Ms. Smith's testimony that she and Dr. Portera had discussed the condition on prior occasions is sufficient to create an issue of fact as to whether the condition was unforseen and, therefore, whether she gave consent for the additional surgery.

As we have noted, the motion for summary judgment filed by Dr. Portera and granted by the trial court contends that Dr. Portera had express consent to perform the excisional biposy on Ms. Smith and that there is no genuine issue of material fact in that regard. Ms. Smith's response to this motion argues that she did not expressly consent to the excisional biopsy and that there is no genuine issue of material fact in that regard. Ms. Smith further contends that, while there is no genuine issue as to whether there was express consent, there is a genuine issue of material fact as to whether there was implied consent. After carefully reviewing the record in this case, we have concluded that a genuine issue of material fact remains as to whether Ms. Smith consented to the excisional biopsy. Although we are urged by Ms. Smith to distinguish between "express consent" and "implied consent", we do not find such distinction to be of consequence in this case, the salient question being whether Dr. Portera had consent - not whether such consent was express or implied.

For the reasons stated herein, the judgment of the trial court is vacated and the cause is remanded for trial on the merits. Costs on appeal are adjudged against Charles A. Portera, M.D.

_____
SHARON G. LEE,  JUDGE